# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 26, 2001 Session

## R. JEROME BEASLEY, JR., ET AL. v. LLOYD AMBURGY, D/B/A AARON'S LIMOUSINE SERVICE, ET AL.

### Appeal from the Circuit Court for Davidson County
### No. 99C-2830    Barbara N. Haynes, Judge

---

### No. M2000-03122-COA-R3-CV - Filed September 27, 2001

---

A limousine driver, after taking Tylenol and two or three shots of novocaine for an abscessed tooth, suffered a blackout and lost control of the automobile. The trial court granted summary judgment to the driver and his employer on the ground that the blackout was not reasonably foreseeable. We affirm.

### Tenn. R. App. P. Rule 3; Judgment of the Circuit Court
### Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

J. P. Barfield, Nashville, Tennessee, for the appellants, R. Jerome Beasley, Jr., Christy Louise Miller and Michael Lynn Gowen.

Stephen E. Cox and C. Benton Patton, Nashville, Tennessee, for the appellees, Lloyd Amburgy, d/b/a Aaron's Limousine Service and Ronnie G. Brock.

### OPINION

### I.

On the morning of March 17, 1999, Ronnie G. Brock awoke with a toothache. About 4:30 a.m. he took one Tylenol #3 with codeine. Later in the afternoon Mr. Brock went to the East Nashville Dental Center for treatment. He received two or three shots of novocaine for the pain and a prescription for penicillin to fight the infection in his abscessed tooth. He also received a prescription for Lortab, a pain killer. At approximately 7:00 p.m. Mr. Brock took one penicillin tablet, but he did not fill his Lortab prescription until the next day.

That evening, Mr. Brock, on an assignment by his employer, Lloyd Amburgy, d/b/a Aaron's Limousine Service, picked up three passengers and took them to a restaurant. After visiting an Irish pub downtown, the passengers decided to go to a nightclub in Old Hickory. Mr. Brock headed north on

Interstate 65 and the turned off onto Old Hickory Boulevard. Almost immediately Mr. Brock experienced a "funny feeling like a cold sweat." He looked for a place to pull off the road but he lost consciousness and wrecked the automobile severely injuring his passengers. The time of the accident was approximately 12:20 a.m. on March 18, 1999.

The three passengers sued Mr. Brock and his employer for their injuries. They alleged that Mr. Brock negligently decided to operate the limousine when a reasonable person would have foreseen that the drugs in his system made it dangerous. In addition to the employer's liability on the basis of respondeat superior, the complaint alleged that the employer was negligent in entrusting the limousine to its impaired driver.

The defendants filed a motion for summary judgment on the ground that Mr. Brock's sudden loss of consciousness was not foreseeable. The trial court granted the motion.

## II.

Summary judgments are appropriate only when the facts material to the dispositive legal issues are undisputed. *Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000). On appeal we view all the evidence in the light most favorable to the non-movant, and we resolve all factual inferences in the non-movant's favor. *Id.* at 157.

In *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995), the Supreme Court said:

A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action. To constitute a defense, defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.

*Id.* at 155, 156.

Thus, where the sudden loss of consciousness is a defense liability turns on whether the event was foreseeable to a reasonably prudent person. The Court went on to list several factors that might make the event foreseeable.

The extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's

guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident.

*Id.* at 156.

In this case, there was no evidence that Mr. Brock had ever experienced any sudden incapacity or loss of consciousness, prior to the accident. There was also no evidence that he had ever been diagnosed with a condition that would lead him to anticipate such an episode. There is no dispute as to the events in Mr. Brock's day prior to the accident -- the 4:30 a.m. ingestion of the Tylenol #3 with codeine, the dental appointment with its novocaine shots, or the penicillin at 7:00 p.m. The two doctors whose testimony appears in the record disagree about whether Mr. Brock suffered a seizure, but there is nothing in the record that indicates a reasonably prudent person should have foreseen any impairment in his ability to drive after being medicated as he was.

The only thing wrong with Mr. Brock was an infected tooth. The medical factors listed in *McCall v. Wilder* are driving-specific; i.e. they relate to a medical condition that would incapacitate a driver. We could hardly say as much for an infected tooth.

There is no evidence in the record that any specific drug taken by Mr. Brock or any of them in combination caused him to lose consciousness. One of the medical experts said that you should not operate machinery after taking codeine – depending on the length of time after ingesting the drug. But the expert did not know how long it had been since Mr. Brock took the Tylenol #3 with codeine; therefore she could not give an opinion that the drug actually caused him to black out.

Even if we knew what caused Mr. Brock's spell, there is no proof from which we could infer that a reasonably prudent person should have foreseen it. A trip to the dentist and multiple shots of novocaine commonly do not incapacitate a driver. Neither does penicillin – even in combination with other drugs – and there is no proof that one should expect a sudden loss of consciousness twenty hours after taking Tylenol #3 with codeine.

It goes without saying that if Mr. Brock was not negligent his employer is not liable on the basis of respondeat superior, and if a reasonably prudent person would not have foreseen any difficulties in driving a car under the conditions present here, Mr. Brock's employer was not negligent in entrusting the car to him.

The judgment of the court below is affirmed and the cause is remanded to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants, R. Jerome Beasley, Jr., Christy Louise Miller and Michael Lynn Gowen.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.