IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 7, 2010 Session

## TIMOTHY SCHWANDNER v. DANA S. HIGDON

**Appeal from the Circuit Court for Marion County**
**No. 17758      Thomas W. Graham, Judge**

---

**No. M2010-00910-COA-R3-CV - Filed April 26, 2011**

---

The driver of a car suddenly passed out, causing her vehicle to strike a stopped pickup truck and seriously injure its driver. The pickup driver sued, and the defendant filed a motion for summary judgment, arguing that she was not liable for the plaintiff's injuries because her sudden loss of consciousness was unforeseeable. Since it was undisputed that prior to the accident the defendant had not eaten during a full day of busy activity, the plaintiff argued that it was foreseeable that the she would lose consciousness. The trial court did not agree, and it granted the defendant's motion. We affirm the trial court

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

James R. Kennamer, Chattanooga, Tennessee, for the appellant, Timothy Schwandner.

Michael Ross Campbell, Chattanooga, Tennessee, for the appellee, Dana S. Higdon.

**OPINION**

### I. AN UNFORTUNATE ACCIDENT

The essential facts about the events leading up to the accident from which this lawsuit arose are undisputed. Only the legal consequences of those facts are at issue. At about 6:40 p.m. on November 2, 2007, a car driven by defendant Dana Higdon slammed into the rear of a pickup truck driven by Timothy Schwander, causing Mr. Schwander to suffer serious injury. On February 18, 2008, Mr. Schwander (hereinafter "Plaintiff") filed suit against Ms. Higdon (hereinafter "Defendant") in the Circuit Court of Marion County, alleging that his injuries were caused by Defendant's negligent operation of her automobile.

Defendant answered, admitting the general manner in which the accident occurred. She denied any negligence or fault, however, asserting that the accident was unavoidable because "[s]he was operating her vehicle in a careful manner prior to the accident and experienced a sudden, unexpected and unforeseeable loss of consciousness prior to the accident and would have been able to stop behind the Schwander vehicle but for her loss of consciousness."

The course of discovery included requests for medical records and submission of interrogatories. Defendant's deposition was also taken, as well as the deposition of Dr. Martha Ziegler, who had treated Defendant, and that of Dr. Charles Adcock, who had treated Plaintiff. These discovery activities did not uncover any additional theories of liability or possible defenses. Thus, the question of liability rested solely on the legal effect of Defendant's unexpected loss of consciousness.

On September 23, 2009, Defendant filed a motion in limine to exclude any testimony by Dr. Adcock regarding her loss of consciousness prior to the accident, because he had never treated her, and Plaintiff had not disclosed his intention to use Dr. Adcock as an expert witness. *See* Tenn. R. Civ. P. 26.05(1)(B); *White v. Vanderbilt University*, 21 S.W.3d 215 (Tenn. Ct. App. 1999). The trial court took the motion under advisement, pending further proceedings.

On December 15, 2009, Defendant filed a motion for summary judgment accompanied by a statement of undisputed material facts. *See* Tenn. R. Civ. P. 56.03. The motion was supported by Defendant's affidavit and those of her husband and of her mother, who had been riding with her as a passenger at the time of the accident. Defendant was twenty-three years old when the accident occurred, married and with one child. She testified that she was healthy and that she had no medical problems or conditions that would cause her to suddenly pass out. She further stated that she had never before fainted, other than one time when she was a child and had been given an injection or had her blood drawn at the doctor's office.

According to Defendant's affidavit and deposition, her husband was off work on the day of the accident, so he stayed at their home in Whitwell and took care of the parties' one year old child while Defendant cleaned the house. Defendant did not eat any breakfast or lunch. She testified that she did not skip those meals on a regular basis, but had done so in the past without any problems. At 2:00 p.m., Defendant stopped cleaning and got ready to pick up her mother, so they could go shopping for groceries together. Defendant left her home at around 2:30 p.m. After picking her mother up at her home in Jasper, the two women went to the Wal-Mart in Kimball, where they shopped for two or three hours.

They left Wal-Mart at about 6:00 p.m. to pick dinner up for themselves and for other family members. Because everybody wanted something different, Defendant had to stop at three nearby fast food restaurants - first to Pizza Hut for Defendant and her husband, then to KFC for Defendant's mother, then to Krystal for Defendant's father. Defendant testified that while picking up dinner at the first two stops she realized she was hungry, so when they reached Krystal, she ordered a Krystal hamburger, some fries and a Dr. Pepper for herself.

Defendant ate several bites of the hamburger and a couple of fries and drank some Dr. Pepper. She then drove out of the Krystal parking lot and turned into the street. She testified that she was going 15 or 20 miles an hour and had traveled a few hundred feet as she saw the light at the first intersection change from yellow to red. Then things took an unexpected turn:

> Suddenly, I got hot and sweaty, and that was it. I passed out. The time lapse from the sensation of getting hot and sweaty to the time I passed out was no more than two seconds. It just hit me. I had no time to do anything. It was just like a heat wave that rushed through me and that was it. 'It was daylight to dark.' I do not know what happened after I passed out. When I awoke , my Jeep Cherokee had crashed into a guard rail, and I heard sirens and a woman telling me she was a nurse and not to move and other people screaming my name.

Defendant's mother testified by affidavit that Defendant was going about 20 miles per hour and was braking for a red light when she suddenly passed out and slumped in her seat. The car went out of control, hit Plaintiff's truck, which was stopped at the red light, and then ran over a curb and into a guard rail on the side of the road. The impact was violent enough to deploy the airbags in Defendant's car. An ambulance arrived at the scene less than twenty minutes after the accident. Defendant suffered bruises and a fractured sternum. Defendant's mother suffered a broken arm. Plaintiff suffered a whiplash injury and a possible concussion, resulting in muscle strain, numbness and persistent headaches. He was unable to work for at least three months after the accident.

## II. THE MEDICAL EVIDENCE

Plaintiff responded to Defendant's motion for summary judgment and to her statement of undisputed material facts on January 29, 2010. He asserted that Defendant's sudden loss of consciousness was caused by hypoglycemia (low blood sugar), a condition that he alleged was a foreseeable result of her refusal to eat on the day of the accident. He attached to his response excerpts from the depositions of Defendant and of the parties' two treating physicians. Plaintiff also filed the complete depositions and the medical records that were exhibits to those depositions. The proof showed that emergency medical personnel

performed a blood glucose stick on Defendant at the scene of the accident, and that Defendant and Plaintiff were both transported to the Emergency Room at Grandview Medical Center in Jasper for treatment.

A week after the accident, Defendant went to see Dr. Martha Ziegler, her family physician. The record from that physician visit showed that aside from her blackout and motor vehicle accident, Defendant reported "4 episodes since MVA." Dr. Ziegler's initial diagnosis was hypoglycemia. The records from the Medical Center, however, showed a glucose reading of 82 mg. per deciliter from the blood that was drawn from Defendant after the accident.

Dr. Ziegler testified at deposition that such a reading was within normal limits, and that a reading of 60 or below was the normal threshold for hypoglycemia. She also acknowledged, however, that a low glucose reading could be brought back to normal levels within a few minutes of eating a candy bar or drinking orange juice. Plaintiff therefore argues that the reason the blood glucose reading taken at the scene of the accident was normal was because by the time Defendant's blood was drawn, the sugar from the soft drink had reached her bloodstream.

Plaintiff's attorney pressed Dr. Ziegler to testify that hypoglycemia was the most likely cause of Defendant's loss of consciousness. But Dr. Ziegler spoke of it more as a possibility, and said "it would be high on my list of differential diagnoses." She noted, however, that Defendant had no prior history of hypoglycemia or fainting, and that in 35% to 40% of fainting episodes, the cause is never discovered.

Dr. Ziegler had arranged for Defendant to wear a Holter Monitor for 24 hours to find out if she had any kind of heart condition, such as an arrhythmia, that might have caused her to faint. But the readings from the monitor did not produce any evidence of such a condition. Dr. Ziegler also referred Defendant to Dr. Daniel Fisher, a vascular surgeon who treats patients that report episodes of syncope or loss of consciousness.

Dr. Fisher met with Defendant, examined her, and studied her medical records. He subsequently executed an affidavit which Defendant submitted to the court as a supplement to her summary judgment motion. Dr. Fisher was unable to determine the reason for the fainting incident, but he declared that hypoglycemia could be ruled out because of Defendant's blood glucose level at the scene of the wreck. He also stated that, "unless she has some unknown endocrine abnormality of which no one is aware, the missing of several meals would not cause her blood glucose to fall to a precariously low level, because she should have the normal insulin/glucagon ration that would maintain her blood glucose level and prevent her from becoming hypoglycemic."

Dr. Charles Adcock examined and treated Plaintiff after the accident. Dr. Ziegler and Dr. Adcock share medical offices, but Dr. Adcock never treated Defendant. Much of Dr. Adcock's deposition testimony involved the injuries suffered by Plaintiff, Dr. Adcock's treatment of him, and the resulting medical bills. But Plaintiff's counsel also repeatedly asked Dr. Adcock to respond to hypothetical questions, such as, "Do you have an opinion, based upon a reasonable degree of medical certainty, if someone is fasting to apparently lose weight and has gone all day without eating and then gets behind the wheel of a car, whether that person is posing unreasonable risks of passing out due to a hypoglycemic attack?"[1] Dr. Adcock's answer was "They might not realize it, but , yes, it would be a possibility." These and similar questions and answers were the ones that Defendant sought to exclude in her motion in limine.

The hearing on the motion for summary judgment was conducted on March 25, 2010. Plaintiff argued that under the circumstances of the case it would be foreseeable to a reasonably prudent person that Defendant had placed herself at risk for hypoglycemia and for sudden loss of consciousness. Defendant argued that because she did not have any history of fainting or of any medical condition that might lead her to suspect that she was subject to such an occurrence, her sudden loss of consciousness could not have been reasonably foreseen. After hearing vigorous argument from both sides, the court took the matter under advisement, declaring that it would have to rule on the motion pretty quickly, because the case was set for trial on April 13 and 14, 2010.

On April 6, 2010, the court filed a Memorandum Opinion and Order, granting Defendant's motion for summary judgment. The court did not specifically refer to Defendant's motion in limine, but it stated that "[i]n order to withstand summary judgment, the Plaintiff must bring forth some factual basis to support a finding of fact that the Defendant knew or should have known that she might lose consciousness if she drove on the date, place and time alleged in the complaint." The court did not find any such fact in the materials submitted to it, and it accordingly ruled that the essential element of foreseeability was unsupported. This appeal followed.

### III. ANALYSIS

#### A. The Standard of Review on Summary Judgments

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is

---

[1]There was no evidence in this case that Plaintiff was trying to lose weight, or that she had experienced a significant loss of weight over a relatively short time period.

entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn. 2004); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The trial court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor. *Stanfill v. Mountain,* 301 S.W.3d 179, 184 (Tenn. 2009); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d at 215.

Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Green v. Green*, 293 S.W.3d 493, 513 (Tenn. 2009); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 84; *BellSouth Advertising & Publishing Co. v. Johnson,* 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). We review the summary judgment decision as a question of law. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d at 763.

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d at 214). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 83; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

"When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be must be resolved by the trier of fact." *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215). If, and only if, the moving party successfully negates an essential element of the nonmoving party's claim or demonstrates the nonmoving party's inability to prove an essential element at trial, the burden shifts to the non-moving party to at least create a dispute of fact as to the element. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 84. If the moving party does not meet

its burden, however, there is no shifting of the burden to produce evidence, and it is premature to examine the sufficiency of the evidence presented by the nonmoving party at the summary judgment stage. *Stanfill v. Mountain*, 301 S.W.3d at 184; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 7.

## B. Negligence and Foreseeability

Plaintiff's claim is based on allegations that Defendant acted negligently. "No claim for negligence can succeed in the absence of any one of the following elements: (1) a duty of care owed by defendant to plaintiff; (2) conduct below that standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993); *Knowles v. State of Tennessee*, 49 S.W.3d 330, 335 (Tenn. Ct. App. 2001). This appeal involves the first two of these elements.

It is beyond dispute that a motorist has a duty to use reasonable care in the operation of his or her vehicle in order to protect other drivers. But how are we to properly understand that duty of care when a motorist's sudden loss of consciousness or of the capacity to drive safely causes injury? The leading Tennessee case on that question is *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995). The defendant driver in that case suffered a seizure and lost control of his car, crashing into another vehicle and injuring the plaintiff.[2] The Tennessee Supreme Court held that under that circumstance, the question of duty is closely tied to that of foreseeability:

> A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action. To constitute a defense, defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.

*McCall v. Wilder*, 913 S.W.2d at 155-56.

In the present case Plaintiff argues that Defendant suddenly lost consciousness while

---

[2]The actual defendant in *McCall v. Wilder* was the executor of the estate of the driver whose sudden incapacity caused the accident that led to the lawsuit. For the sake of simplicity, however, we refer to the driver as the defendant.

driving because she had skipped breakfast and lunch earlier that day. He relies on testimony by Dr. Ziegler that she could not exclude hypoglycemia as the possible cause of the unfortunate accident and by the testimony of Dr. Adcock which was challenged by Defendant's motion in limine. Whatever the cause of Defendant's loss of consciousness, the question is whether it was, or should have been, foreseeable to a reasonably prudent person.

The *McCall v. Wilder* court listed a number of factors that might make a sudden loss of capacity or of consciousness foreseeable.

> The extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident.

*McCall v. Wilder*, 913 S.W.2d at156.

The defendant in *McCall v. Wilder* had a brain tumor located in an area of the brain associated with epilepsy. The tumor was not discovered, however, until after the accident, when its existence was revealed by a CT scan and confirmed by surgery. The defendant filed a motion for summary judgment on the basis of the sudden emergency doctrine.[3] The motion was granted by the trial court and affirmed by the Court of Appeals. Our Supreme Court reversed, because the parties had stipulated that the defendant had suffered seizures prior to the fateful accident. The court concluded that those earlier episodes rendered the defendant aware of facts that made it reasonably foreseeable that another such episode could occur while he was driving and lead to an accident. *McCall v. Wilder*, 913 S.W.2d at156.

In *Beasley v. Amburgy*, 70 S.W.3d 74, 76 (Tenn. Ct. App. 2001), this court applied the reasoning set out by the Supreme Court in *McCall v. Wilder*, but found that a different

---

[3]Among other things, our Supreme Court noted that the defendant's reliance on the sudden emergency doctrine was misplaced, because that doctrine had been subsumed into Tennessee's comparative fault scheme. *McCall v. Wilder*, 913 S.W.2d at 157.

set of facts dictated a different result. That case began after a limousine driver named Ronnie Brock suddenly blacked out and wrecked his vehicle, severely injuring his passengers. The passengers sued. The defendant filed a motion for summary judgment on the ground that his blackout was not foreseeable.[4]  The trial court granted the motion.

We noted on appeal that the defendant had never before experienced any sudden incapacity or loss of consciousness and that there was no evidence that he had ever been diagnosed with a condition that would lead him to anticipate such an incident.  We also reviewed the facts which the plaintiff argued made the defendant's loss of consciousness nonetheless foreseeable.

On the morning before the accident, the defendant woke up early with a toothache from an abscessed tooth. He took a Tylenol #3 with codeine and went to the dentist in the afternoon.  He received two or three shots of novocaine and a prescription for penicillin to fight the infection.  He took one penicillin tablet at 7:00 p.m. and went to work in the evening.  His loss of consciousness and accident occurred at 12:20 a.m.

We affirmed the summary judgment, even though a medical witness had testified that you should not operate machinery after taking codeine, depending on the length of time after ingesting the drug.  Because twenty hours had elapsed between the defendant's ingestion of Tylenol with codeine and the accident, and because there was no medical proof that novocaine or penicillin, whether taken separately or together, normally incapacitate a driver, we were unable to link the defendant's medication intake to the accident.  We concluded, however, that "[e]ven if we knew what caused Mr. Brock's spell, there is no proof from which we could infer that a reasonably prudent person should have foreseen it." *Beasley v. Amburgy*, 70 S.W.3d at 77.

The proof in the present case shows that Defendant was not under a physician's care for any condition known to cause fainting, that she had not taken any medication likely to produce that effect, and that she had never previously fainted as an adult.  She had also managed to skip breakfast and lunch in the past without suffering any adverse physical effects.  Thus, even if we accept Plaintiff's argument that hypoglycemia caused Defendant to faint, there was no proof to indicate that she could have or should have foreseen that result.

Plaintiff suggests that the sudden hunger Defendant experienced as she was picking up dinner for family members constituted an advance warning of impending loss of consciousness, which she should have heeded.  But it would hardly be unusual for an

---

[4]The named defendant in *Beasley v. Amburgy* was the owner of the limousine service that Mr. Brock worked for.  For the sake of simplicity, however, we will refer to Mr. Brock as the defendant.

individual to suddenly feel hungry after skipping two meals. Many people experience hunger, and that experience does not constitute a warning that unconsciousness will soon occur.

We do not find that it would be reasonably foreseeable to a prudent person in Defendant's position that events would unfold as they did. Plaintiff has thus failed to create a genuine dispute of material fact as to an essential element of his claim – that Defendant was negligent in failing to act with the due care required of a reasonably prudent person facing a foreseeable risk. We therefore affirm the trial court's grant of summary judgment to Defendant, in accordance with the reasoning set out by our Supreme Court in *McCall v. Wilder*.

## IV.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Marion County for any further proceedings necessary. Tax the costs on appeal to the appellant, Timothy Schwander.

_____
PATRICIA J. COTTRELL, JUDGE