# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 24, 2013 Session

## GEORGE SMITH v. GENERAL TIRE AND EMILY ALEXANDER

**Appeal from the Circuit Court for Sumner County**
**No. 2010CV1407      C. L. Rogers, Judge**

---

**No. M2012-01446-COA-R3-CV - Filed May 30, 2013**

---

A man who was injured in a head-on collision filed suit against the woman driving the car that hit him and the company that owned the car.  The defendants filed a motion for summary judgment, accompanied by affidavits indicating that the woman unexpectedly blacked out just prior to the collision, probably as a result of her diabetic condition.  After examining the affidavits of medical experts for both the plaintiff and the defendants, the trial court granted summary judgment to the defendants, holding that the driver's loss of consciousness was unforeseeable.  The plaintiff appeals the summary judgment.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Herbert Schaltegger, Thomas R. Lewis, Nashville, Tennessee, for the appellant, George Smith.

W. Bryan Brooks, Alisha M. Toll, Benjamin J. Miller, Nashville, Tennessee, for the appellees, General Tire and Emily Alexander.

## OPINION

### I.  THE ACCIDENT

At about 6:30 in the evening on January 11, 2010, George Henry Smith was driving his work van in a left lane on Gallatin Pike when he saw a white car coming towards him as it weaved in and out of traffic, followed by a police car with its lights on.  Mr. Smith tried to move over to the right lane, but was unable to do so because of the cars in that lane. Shortly thereafter, his vehicle was struck head-on by the white car.

Mr. Smith testified at deposition that a sheriff's deputy arrived immediately after the accident and told him not to move and that an ambulance had been called. As he was waiting for the ambulance, Mr. Smith was able to look through his windshield into the white car. He observed that the other driver was unconscious with her eyes closed, but that there was no blood or any visible injury. The driver of the other car was Emily Alexander, and the car she drove belonged to General Tire Company, a business owned and operated by her husband.

On November 10, 2010, Mr. Smith filed a negligence complaint in the Circuit Court of Sumner County, naming Ms. Alexander and General Tire as defendants. The defendants filed an Answer in which they denied any negligence and alleged that the accident "was the result of an unavoidable and unforeseen state of unconsciousness of Emily Alexander . . . ."

When Ms. Alexander was deposed, she testified that she remembered running errands on the day of the accident, and that her last memory before waking up in an ambulance on the way to the hospital was coming to a red light on Gallatin Road. She stated that she had no memory at all of the accident. Ms. Alexander also testified that she had been diagnosed with Type I diabetes at age 24 and that she was 58 at the time of deposition. To control her diabetes, she wears a Humalog insulin pump, which she has been using for thirty years. The pump is programmed to give her a little bit of insulin all day long and a little bit extra after each meal. She testified that at the time of the accident she was also taking Symlin, another diabetic medication, before each meal.

Ms. Alexander stated that she followed her normal routine on the day of the accident including eating three meals, taking her medication, and exercising. She said she also checked her blood glucose, and there were no problems. She acknowledged that she had experienced a few episodes of light-headedness in the past from low blood sugar, but she denied that it had ever before caused her to lose consciousness.

Ms. Alexander was questioned more closely at a second deposition about her routine for controlling diabetes. Among other things, she testified that her insulin pump was linked to an alarm that goes off when her glucose level gets too low, and that she always carries something with her that contains sugar in case she feels light-headed and/or any other symptoms that she has learned to recognize as indicating a low glucose level.

Additionally, she testified that she used a pen-like syringe with pre-set dosages to administer her Symlin. She was questioned about the exact dosage of Symlin she usually took and the dosage she took on the day of the accident, but she stated that she did not recall. Under further questioning, she testified that she had been taking Symlin for two years prior to the accident.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants filed a motion for summary judgment on November 30, 2011, accompanied by a memorandum of law, a statement of undisputed facts, and the affidavits of Emily Alexander and of Dr. Michael May, an endocrinologist who had been treating Ms. Alexander since February of 2003. Dr. May testified that he had been informed about Ms. Alexander's accident and her claim that she had blacked out and had no memory of the accident.

Dr. May's account of Ms. Alexander's condition and of her treatment, including her use of the Humalog pump and Symlin, was consistent with her deposition testimony. He stated that she "has no physical restrictions or limitations, and is fully active as school teacher and wife." He also stated his opinion "to a reasonable degree of medical certainty," that "at the time of the accident Mrs. Alexander was in a state of cognitive dysfunction as a result of a very low blood glucose level and her diabetic condition," and that her cognitive dysfunction made Ms. Alexander unaware of her surroundings and unable to operate her car safely.

Dr. May further stated that there was no way Ms. Alexander could have known that she was going to lose consciousness because her blood glucose level probably dropped rapidly before her alarm sounded. He concluded by stating that "I have advised Mrs. Alexander not to drive a motor vehicle if her blood glucose level is less than 70, but I have never advised her she could not operate a motor vehicle due to her diabetic condition."

Mr. Smith filed a memorandum in opposition to the motion for summary judgment, accompanied by the affidavit of Dr. David West, a physician who stated that the prescribing information for Symlin comes with a very strong warning. He quoted the warning from the Physicians' Desk Reference (2010 Edition) as follows:

> SYMLIN is used with insulin and has been associated with an increased risk of insulin-induced severe hypoglycemia, particularly in patients with type 1 diabetes. When severe hypoglycemia associated with SYMLIN use occurs, it is seen within 3 hours following a SYMLIN injection. If severe hypoglycemia occurs while operating a motor vehicle, heavy machinery, or while engaging in other high-risk activities, serious injuries may occur. Appropriate patient selection, careful patient instruction, and insulin dose adjustments are critical elements for reducing this risk.

Dr. West concluded his affidavit by stating, "[i]f Emily Alexander was experiencing severe hypoglycemia, it could negatively affect her driving ability." He did not, however, offer any opinion as to whether or not Ms. Alexander could have known that she would suffer a sudden and severe hypoglycemic episode while driving.

3

The trial court heard the arguments for and against the summary judgment motion and announced its decision in an order filed on April 4, 2012. The order stated that the court had examined the undisputed material facts and the inferences flowing from them in the light most favorable to the non-moving party, as it is required to do when deciding a summary judgment motion. The court concluded that the facts indicated that Ms. Alexander's sudden loss of consciousness and the accident resulting from it were not reasonably foreseeable and cited the well-established principle that "[a] sudden loss of consciousness or physical incapacity while driving which is not reasonably foreseeable to a prudent person is a defense to a negligence claim." *McCall v. Wilder*, 913 S.W.2d 150, 152 (Tenn. 1995). The court accordingly granted summary judgment to the defendants and dismissed the plaintiff's complaint. This appeal followed.

### III. THE STANDARD OF REVIEW

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Blair v. West Town Mall,* 130 S.W.3d 761, 764 (Tenn. 2004); *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993). The trial court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Stanfill v. Mountain*, 301 S.W.3d 179, 184 (Tenn. 2009); *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002); *Byrd v. Hall*, 847 S.W.2d at 215.

Consequently, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *Green v. Green,* 293 S.W.3d 493, 513 (Tenn. 2009); *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 269 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001).

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 84; *BellSouth Advertising & Publishing Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 285 (Tenn. 2001). We review the summary judgment decision as a question of law. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall,* 130 S.W.3d at 763.

4

## IV. DRIVER'S LOSS OF CONSCIOUSNESS

The leading Tennessee case on the question of liability when a motor vehicle accident is caused by a driver's sudden loss of consciousness is *McCall v. Wilder*, 913 S.W.2d 150 (Tenn. 1995). The plaintiff in that case was injured by a collision with a defendant driver who lost control of his automobile when he suffered a seizure. The trial court granted summary judgment to the defendant, which this court affirmed, holding that "an automobile accident resulting from an unavoidable sudden emergency, such as an epileptic seizure, negates negligence." *McCall v. Wilder*, 913 S.W.2d at 152.

Our Supreme Court determined, however, that such cases required a more nuanced approach than one that simply negates negligence as a matter of law whenever a driver suddenly loses consciousness, and it accordingly adopted a rule that embodies such an approach:

> A sudden loss of consciousness or physical capacity experienced while driving which is not reasonably foreseeable is a defense to a negligence action. To constitute a defense, defendant must establish that the sudden loss of consciousness or physical capacity to control the vehicle was not reasonably foreseeable to a prudent person. As a result, the defense is not available under circumstances in which defendant was made aware of facts sufficient to lead a reasonably prudent person to anticipate that driving in that condition would likely result in an accident.

*McCall v. Wilder,* 913 S.W.2d at 155-56; *see also*, *Beasley v. Amburgy*, 70 S.W.3d 74 (Tenn. Ct. App. 2001); *Schwandner v. Higdon,* 2011 WL 1630982 (Tenn. Ct. App. Apr. 26, 2011) (perm. app. denied Aug. 25, 2011).

Since the question of reasonable foreseeability is central to the resolution of cases involving sudden unconsciousness, medical testimony is critical to determine the reasonableness of the risk presented by a medical condition that can lead to unconsciousness. There are a number of "pertinent, non-exclusive considerations" to help the courts evaluate the foreseeability of sudden loss of consciousness or capacity in a driving situation:

> the extent of the driver's awareness or knowledge of the condition that caused the sudden incapacity; whether the driver had sought medical advice or was under a physician's care for the condition when the accident occurred; whether the driver had been prescribed, and had taken, medication for the condition; whether a sudden incapacity had previously occurred while driving; the number, frequency, extent, and duration of incapacitating episodes prior to the accident while driving and otherwise; the temporal relationship of the prior incapacitating

episodes to the accident; a physician's guidance or advice regarding driving to the driver, if any; and medical opinions regarding the nature of the driver's condition, adherence to treatment, foreseeability of the incapacitation, and potential advance warnings which the driver would have experienced immediately prior to the accident.

*McCall v. Wilder,* 913 S.W.2d at 156.

Applying those factors to the evidence before it, the *McCall* court cited the stipulated facts that the defendant driver had suffered seizures prior to the accident and that he was aware that he had a seizure disorder that could cause unconsciousness. The court also noted that the driver had been diagnosed with a brain tumor and that the plaintiff's expert physician testified by affidavit that in light of the defendant's condition, he took an unreasonable risk by driving at all. The court accordingly reversed the summary judgment for the defendant driver because there was a question of material fact as to whether it would be foreseeable to a reasonably prudent person under those circumstances that he would lose consciousness while driving.

The *McCall* court also cited with approval an earlier case, *Robinson v. Moore*, 512 S.W.2d 573 (Tenn. Ct. App. 1974), which involved facts similar to those in the case before us. The defendant in that case was a bus driver who was diagnosed with diabetes in 1959, when he began taking insulin for that condition. After sixteen years without an accident, he blacked out behind the wheel one day and struck the plaintiff's automobile, causing injury. The testimony of medical witnesses suggested that the driver's loss of consciousness was due to "a sudden unheralded drop in blood sugar content (hypoglycemia)." *Robinson v. Moore*, 512 S.W.2d at 577. The case went to a jury, which found that there was no negligence on the part of the defendant driver. This court affirmed that part of the jury verdict, noting that there was no evidence "medical or otherwise," that the driver's diabetic condition rendered him unfit to drive.[1]

*Robinson v. Moore* stands for the proposition that a diabetic condition does not *ipso facto* render an individual incompetent to drive. Thus, we must determine whether the specific evidence presented in this case raises a question of material fact as to whether it should have been foreseeable to a reasonably prudent person in Ms. Alexander's position that she would lose consciousness while driving.

---

[1]Although the facts of *Robinson v. Moore* are similar to those in the case before us, the procedural posture of the earlier case was different. Aside from his claim against Mr. Moore, Mr. Robinson brought a separate claim against the Memphis Transit Management Corporation for negligent entrustment. The jury returned a verdict for the defendant driver, but against the defendant bus company. This court found such a split verdict inconsistent, reasoning that if Mr. Moore was competent to drive a bus, the company could not be negligent for hiring him to do so. *Robinson v. Moore*, 512 S.W.2d at 578.

A party seeking summary judgment must demonstrate the absence of any genuine and material factual issues. *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998) (citing *Byrd v. Hall*, 847 S.W.2d at 214). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 83; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1,9 (Tenn. 2008).

"When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be must be resolved by the trier of fact." *Staples v. CBL & Associates*, 15 S.W.3d 83, 86 (Tenn. 2000) (citing *Byrd v. Hall*, 847 S.W.2d at 215). If, and only if, the moving party successfully negates an essential element of the nonmoving party's claim or demonstrates the nonmoving party's inability to prove an essential element at trial, the burden shifts to the non-moving party to at least create a dispute of fact as to the element. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d at 84. If the moving party does not meet its burden, however, there is no shifting of the burden to produce evidence, and it is premature to examine the sufficiency of the evidence presented by the nonmoving party at the summary judgment stage. *Stanfill v. Mountain*, 301 S.W.3d at 184; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d at 7.

Examining the facts of this case in light of the factors set out in *McCall v. Wilder*, we note that Ms. Alexander had suffered from diabetes for more than half of her life, was fully aware of her medical condition, was under a doctor's care, and had been taking the medication he prescribed to keep it under control. Further, she testified that while she had previously experienced a few episodes of light-headedness caused by low blood sugar, it had never before caused her to lose consciousness. Ms. Alexander also testified that on the day of the accident she had followed her usual routine in regard to meals and the administration of diabetes medication. Additionally, she used a pump that was designed to sound an alarm if her blood sugar got too low.

Dr. May, who had treated Ms. Alexander since 2003, testified that her blood sugar must have dropped too rapidly for her to become aware of it or to take steps to counteract its effects before she lost consciousness. He also testified that he had never advised her that she could not operate a motor vehicle due to her diabetic condition.

By this testimony, the party moving for summary judgement, here the defendants, provided proof that it was not reasonably foreseeable that Ms. Alexander would suffer a sudden loss of consciousness. The burden then shifted to the plaintiff to provide specific facts

that would establish a dispute of material fact.

The only proof offered by Mr. Smith to controvert the evidence presented by Ms. Alexander was the affidavit of Dr. West, who had never treated Ms. Alexander, and who simply quoted a warning from the Physicians' Desk Reference, that viewed in the light most favorable to Mr. Smith and drawing all reasonable inferences in his favor, suggests that it may be unwise for a diabetic to drive within three hours of receiving Symlin. But no evidence was presented that Ms. Alexander had been advised of that warning, that she had ever consulted the Physicians' Desk Reference (a book not normally used by laypersons), or that there was a package insert that came with the Symlin she used containing the same warning. Further, Dr. May testified that he never placed any physical restrictions or limitations on Ms. Alexander, or that he had advised her not to drive.

Lacking any other proof, Mr. Smith attempts to cast doubt on Ms. Alexander's sworn testimony by noting that she responded to many deposition questions by "conveniently" saying that she did not recall. For example, while she testified that she suffered some episodes of light-headedness before and after the accident, she could not remember the dates of any of those episodes. She also testified that she did not recall what dosage of Symlin she normally took, how many doses were contained in her per pre-filled syringe, or the dosage she took prior to the accident.

But if the incidents of lightheadedness were successfully dealt with, there would have been very little reason for her to remember the exact dates. Further, the proof showed that Ms. Alexander stopped taking Symlin after the accident, and more than two years before the deposition at which she was asked about it, so it should not be surprising if she did not remember the dosage details. In short, we do not believe that any failure of memory on Ms. Alexander's part is sufficient to raise a material question as to whether her loss of consciousness on the day of the accident would have been foreseeable to a reasonably prudent person. We accordingly affirm the trial court.

## VI. CONCLUSION

The judgment of the trial court is affirmed. Remand this case to the Circuit Court of Sumner County for any further proceedings necessary. Tax the costs on appeal to the appellant, George Smith.

_____
PATRICIA J. COTTRELL, JUDGE